# EXHIBIT A

SHAWN CAINE (SBN 134987)
JESSICA KIRSHNER (SBN 331203)
**LAW OFFICES OF SHAWN E. CAINE, A.P.C.**
1221 Camino Del Mar
Del Mar, CA 92014
Tel.:  858-350-1660
Fax: (866)754-1398

CHRISTOPHER C. SIEGLOCK (SBN 295951)
KRISTEN REANO (SBN 321795)
**SIEGLOCK LAW, A.P.C.**
1221 Camino Del Mar
Del Mar, CA 92014
Tel.: (858) 793-0380
Fax: (866) 664-0577


DAVE FOX (SBN 254651)
JOANNA FOX (SBN 272593)
**FOX LAW, A.P.C.**
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
Tel.: (858) 256-7616
Fax: (858) 256-7618

*Attorneys for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO – CIVIL DIVISION

|  |  |
|---|---|
| ERIN HILLMAN, LEEON HILLMAN, KING FISHER MARKET; DENISE DENEAUX; ROBERT W. WADDELL, DEBRA R. WADDELL; GRANT ABO; WILLIAM GEORGE ADAMS; BALLEI ALLEC; MARA LEI ALLEC, RODNEY W. ALLEC, SR.; LONNIE ANDERSON, ELIZABETH CUSHMAN; DUANE ARMBRUSTER; CANDACE LOUISE ATTO; ANTONE AUBREY, JR.; EARL AUBREY, JR., LISA AUBREY; LESTER AUBREY; JOHN T. BAIN, RUTH A. BAIN; JOHN BANKSTON; FRANCINE BANZALI, FARIS REAL ESTATE; KATHLEEN MARIE BARGER-McCOVEY; JOHN BARNETT; TAMARA BARNETT; EDWIN CHARLES BARTOSIEWSKI, SALLY JO BARTOSIEWSKI; CARL BAUDER; JAMES | Case No. _____ <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1.  **INVERSE CONDEMNATION** <br> 2.  **NEGLIGENCE** <br> 3.  **PUBLIC NUISANCE** <br> 4.  **PRIVATE NUISANCE** <br> 5.  **TRESPASS** <br> 6.  **VIOLATION OF PUBLIC UTILITIES CODE § 2106** <br> 7.  **VIOLATION OF HEALTH AND SAFETY CODE § 13007** <br> 8.  **PREMISES LIABILITY** <br><br> <u>**UNLIMITED CIVIL CASE**</u> <br><br> <u>**JURY TRIAL DEMANDED**</u> |

1

| | |
|---|---|
| 1 | BAYES; LINDA BIBBS; ROSEMARY BLEY, )<br>ROBERT BLEY; WENDY BETH ) |
| 2 | BUCHANAN; GARY BURNETT; ANNA )<br>MAE CANTRELL; MATT CARTENSEN, ) |
| 3 | AYELA CARTENSEN; ARTHUR CHACON; )<br>BRUCE CHAPMAN; SEBETHIA COLEMAN; ) |
| 4 | MICHAEL R. CONKEY, LYNETTE L. )<br>TOTANS; BHRETT CROSS; BARRY DAVIS, ) |
| 5 | LINDA S. DAVIS; DEAN A. DAVIS; MARTA )<br>M. DE TELLO; ALAN DECOUX, TINA ) |
| 6 | DECOUX, AL'S GARAGE; JOSE F. ) |
| 7 | DELANNOY, JANICE E. LEMON; ELVIS )<br>DOUGLAS, JOSSELYN HILLENBURG; ) |
| 8 | MELODY DUNCAN, MICHAEL DUNCAN, ) |
| 9 | BARBARA BLACK, INDIAN CREEK TRAIL )<br>PARK, NATUREGRAPH PUBLISHERS; ) |
| 10 | KIRK A. EADIE, ROBYN EADIE; FORREST )<br>EMERSON; JOE B. EMERSON; BRITTANY ) |
| 11 | ETTLEMAN; JOHN VINCENT EVANS, )<br>REBECCA LEA EVANS; DIANE ) |
| 12 | FELICICCHIA; BRANDON GARCIA, )<br>CHRISTINA GARCIA; PAMELA GEIGER, ) |
| 13 | PATRICK J. REIMER; GAIL L. GOODRICH; ) |
| 14 | RICHARD GOODWIN; ROBERT A. )<br>GOODWIN, ELSA R. GOODWIN; DAVID A. ) |
| 15 | GORDON; LEONARD GUINTHER, )<br>MARLAINA P. GUINTHER; DALANEA ) |
| 16 | HACKETT, ALBERT HACKETT; DELYLE )<br>HACKETT; GARY A. HAHN, CAROL S. ) |
| 17 | HAHN; ARLENE HANSELL; CATHERINE ) |
| 18 | HASKELL; CODY JOSEPH HASKELL; ERIK )<br>S. HASKELL; DARREN TODD HENDLEY; ) |
| 19 | BRANDON W. HESS; LYNNE )<br>HETHERINGTON; BROCK HIGDON, LINDA ) |
| 20 | HIGDON; SUSAN HILLMAN; ARRON ) |
| 21 | HOCKADAY; KARYN J. HOOK, DONALD )<br>M. HOOK; KERA D. HOOK, NICK RUTTER; ) |
| 22 | CHARLES HUG, ANNETTE D. HUG; )<br>DANIEL D. HUG; VIRGINA L. HYDE, ) |
| 23 | KURTIS M. BARNES; HALLEE JOBE, ) |
| 24 | DAVID MOEHRING; GORDON DONALD )<br>JODD; DEBRA L. JOHNSON; CRYSTAL ) |
| 25 | JONES; SANDRA RACHEL KANE; JOHN D. )<br>KILROY, KILROY RANCH; EMILY ) |
| 26 | KINSELLA; JUSTIN KROLL; ROSELLEN )<br>LEE, ALYSSA BRINK; DEANNE M. LOGAN,) |
| 27 | STEPHEN B. LOGAN; FLORENCE M. )<br>LOPEZ, JOSE A. LOPEZ; BERNARD G. ) |
| 28 | LOWRY; WILLIAM MALINOWSKI; ) |

| | |
|---|---|
| 1 | ROBERT MANNING, KELLIE MANNING; )<br>WILLIAM MANZO; PATCHES MARSH; ) |
| 2 | LINDA MARTIN; DONALD DALE MAST; )<br>PATRICK MAYFIELD, SHAUNA ) |
| 3 | MAYFIELD, MAYFIELD BUILDERS, )<br>NORTH GATE FARM; LAURA MAYTON, ) |
| 4 | JERRY SNIDER, WESLEY MAYTON; IKE )<br>McABIER, VICTORIA McABIER; DANIEL ) |
| 5 | M. McCARTHY, SUSAN J. McARTHY; ) |
| 6 | MARIBETH McCRACKER, RAYMOND )<br>MOORE; KENNETH M. McCULLEY, ) |
| 7 | DONNA McCULLEY, McCULLEY )<br>LOGGING CO.; VICKI LYNN McINNIS; ) |
| 8 | PETE McLAUGHLIN, LEONA ) |
| 9 | McLAUGHLIN; CELIA MELENDEZ, )<br>ANDREW F. HOLTKAMP, ANDREW P. ) |
| 10 | HOLTKAMP; JESSICA L. MILLER, GERALD)<br>CHURCHILL; BOWDY MINIUM; KATHRYN) |
| 11 | MOEHRING, LAVERNE MOEHRING; ) |
| 12 | LESLIE NORTON; TAMMY PARASHIS, )<br>PHILIP PARASHIS; ROBERT PEREZ, EMMA) |
| 13 | LEE PEREZ, KLAMATH RIVER ) |
| 14 | ADVENTURES; SHAWN PINE; JERRY )<br>POESCHEL, DIANA POESCHEL; KATHY ) |
| 15 | PRICE; CONNIE RASMUSSEN; JASON H. )<br>RASMUSSEN; RYAN RASMUSSEN, ) |
| 16 | DENEGE RASMUSSEN; FRANK REECE, )<br>WILVERNA REECE; KENNETH RICHARDS,) |
| 17 | SHERRY RICHARDS; KIRA RILEA, CHRIS )<br>WILSON; RENE ROBERTS; CHRISTINA ) |
| 18 | MARIE ROBINSON; DOUGLAS A. ) |
| 19 | ROBINSON, GINA M. ROBINSON; )<br>RICHARD ROBISON; TANYA ) |
| 20 | ROSENGREN; JOHN ROTH; PHLISHA )<br>SCOHY; TERRI SEAGRAVER; CHRISTINA ) |
| 21 | SHERBURN, GREGORY SHERBURN; )<br>CRYSTAL SHERBURN, JORDAN OLIVER- ) |
| 22 | GREY, ROBERT PAUL GREY; ANDREE )<br>SILVA; TIMOTHY L. SIMS; FRANK ) |
| 23 | SNIDER, SYDNEY SNIDER; APRIL ) |
| 24 | SPENCE; ROBERT SPENCE, SARA SPENCE,)<br>SPENCE'S GUIDE SERVICE; ELLIOT H. ) |
| 25 | STEELE; CARL STEWART, CIMERON )<br>GOGGIN; AMANDA STRAIN; LUCINDA ) |
| 26 | STURDEVANT; JANINE SUATOWSKI; )<br>DINAH SULIPECK; SALVADOR TELLO; ) |
| 27 | ANN G. THOMASON; EILEEN TIRATERRA, )<br>LOUIS TIRATERRA, CASEY TIRATERRA; ) |
| 28 | JAMES TIRATERRA; NELLARIE J. TITUS; ) |

| | |
|---|---|
| 1 | PHILLIP B. TITUS; DOUGLAS TOWER;      )<br>HAROLD TOWER, APRIL TOWER;        ) |
| 2 | CATHERINE TURNER, RON DRAKE;      )<br>AARON TUTTLE; ALBERT M.              ) |
| 3 | VANDERHOOF; BAXTER VIRTUE, DEBBIE )<br>VIRTUE; JOSEPH WADDELL, JUDY       ) |
| 4 | WADDELL; VICKIE MARIE WALDEN;      )<br>TARA WARE, CHRIS WARE; LISA WEST;  ) |
| 5 | ROBERT S. WHITE, PARTICIA C. WHITE;  )<br>THOMAS D. WHITE, MARY WHITE, WHITE) |
| 6 | LOGGING CO.; DONALD E. WILHITE,     ) |
| 7 | GINGER WILHITE; JESSICA WILSON,     )<br>RAYMOND WILSON; ROSALYNN         ) |
| 8 | YAMAMOTO,                               )<br>                                            ) |
| 9 |          *Plaintiffs*,                        ) |
| 10 | v.                                         )<br>                                            ) |
| 11 | PACIFICORP and DOES 1 through 50,    )<br>Inclusive,                                 ) |
| 12 |                                            ) |
| 13 |          *Defendants*.                       )<br>                                            ) |

Plaintiffs, ERIN HILLMAN, LEEON HILLMAN, KING FISHER MARKET; DENISE

DENEAUX; ROBERT W. WADDELL, DEBRA R. WADDELL; GRANT ABO; WILLIAM

GEORGE ADAMS; BALLEI ALLEC; MARA LEI ALLEC, RODNEY W. ALLEC, SR.;

LONNIE ANDERSON, ELIZABETH CUSHMAN; DUANE ARMBRUSTER; CANDACE

LOUISE ATTO; ANTONE AUBREY, JR.; EARL AUBREY, JR., LISA AUBREY; LESTER

AUBREY; JOHN T. BAIN, RUTH A. BAIN; JOHN BANKSTON; FRANCINE BANZALI,

FARIS REAL ESTATE; KATHLEEN MARIE BARGER-McCOVEY; JOHN BARNETT;

TAMARA BARNETT; EDWIN CHARLES BARTOSIEWSKI, SALLY JO BARTOSIEWSKI;

CARL BAUDER; JAMES BAYES; LINDA BIBBS; ROSEMARY BLEY, ROBERT BLEY,

WENDY BETH BUCHANAN; GARY BURNETT; ANNA MAE CANTRELL; MATT

CARTENSEN, AYELA CARTENSEN; ARTHUR CHACON; BRUCE CHAPMAN;

SEBETHIA COLEMAN; MICHAEL R. CONKEY, LYNETTE L. TOTANS; BHRETT CROSS;

BARRY DAVIS, LINDA S. DAVIS; DEAN A. DAVIS, KAREN DAVIS; MARTA M. DE

TELLO; ALAN DECOUX, TINA DECOUX, AL'S GARAGE; JOSE F. DELANNOY, JANICE

E. LEMON; ELVIS DOUGLAS, JOSSELYN HILLENBURG; MELODY DUNCAN,

MICHAEL DUNCAN, BARBARA BLACK, INDIAN CREEK TRAIL PARK,

NATUREGRAPH PUBLISHERS; KIRK A. EADIE, ROBYN EADIE; FORREST EMERSON;

JOE B. EMERSON; BRITTANY ETTLEMAN; JOHN VINCENT EVANS, REBECCA LEA

EVANS; DIANE FELICICCHIA; BRANDON GARCIA, CHRISTINA GARCIA; PAMELA

GEIGER, PATRICK J. REIMER; GAIL L. GOODRICH; RICHARD GOODWIN; ROBERT A.

GOODWIN, ELSA R. GOODWIN; DAVID A. GORDON; LEONARD GUINTHER,

MARLAINA P. GUINTHER; DALANEA HACKETT, ALBERT HACKETT; DELYLE

HACKETT; GARY A. HAHN, CAROL S. HAHN; ARLENE HANSELL; CATHERINE

HASKELL; CODY JOSEPH HASKELL; ERIK S. HASKELL; DARREN TODD HENDLEY;

BRANDON W. HESS; LYNNE HETHERINGTON; BROCK HIGDON, LINDA HIGDON;

SUSAN HILLMAN; ARRON HOCKADAY; KARYN J. HOOK, DONALD M. HOOK; KERA

D. HOOK, NICK RUTTER; CHARLES HUG, ANNETTE D. HUG, DANIEL D. HUG;

VIRGINA L. HYDE, KURTIS M. BARNES; HALLEE JOBE, DAVID MOEHRING; GORDON

DONALD JODD; DEBRA L. JOHNSON; CRYSTAL JONES; SANDRA RACHEL KANE;

JOHN D. KILROY, KILROY RANCH; EMILY KINSELLA; JUSTIN KROLL; ROSELLEN

LEE, ALYSSA BRINK; DEANNE M. LOGAN, STEPHEN B. LOGAN; FLORENCE M.

LOPEZ, JOSE A. LOPEZ; BERNARD G. LOWRY; WILLIAM MALINOWSKI; ROBERT

MANNING, KELLIE MANNING; WILLIAM MANZO; PATCHES MARSH; LINDA

MARTIN; DONALD DALE MAST; PATRICK MAYFIELD, SHAUNA MAYFIELD,

MAYFIELD BUILDERS, NORTH GATE FARM; LAURA MAYTON, JERRY SNIDER,

WESLEY MAYTON; IKE McABIER, VICTORIA McABIER; DANIEL M. McCARTHY,

SUSAN J. McARTHY; MARIBETH McCRACKER, RAYMOND MOORE; KENNETH M.

McCULLEY, DONNA McCULLEY, McCULLEY LOGGING CO.; VICKI LYNN McINNIS;

PETE McLAUGHLIN, LEONA McLAUGHLIN; CELIA MELENDEZ, ANDREW F.

HOLTKAMP, ANDREW P. HOLTKAMP; JESSICA L. MILLER, GERALD CHURCHILL;

BOWDY MINIUM; KATHRYN MOEHRING, LAVERNE MOEHRING; LESLIE NORTON;

TAMMY PARASHIS, PHILIP PARASHIS; ROBERT PEREZ, EMMA LEE PEREZ,

KLAMATH RIVER ADVENTURES; SHAWN PINE; JERRY POESCHEL, DIANA

POESCHEL; KATHY PRICE; CONNIE RASMUSSEN; JASON H. RASMUSSEN; RYAN

RASMUSSEN, DENEGE RASMUSSEN; FRANK REECE, WILVERNA REECE; KENNETH

RICHARDS, SHERRY RICHARDS; KIRA RILEA, CHRIS WILSON; RENE ROBERTS;

CHRISTINA MARIE ROBINSON; DOUGLAS A. ROBINSON, GINA M. ROBINSON;

RICHARD ROBISON; TANYA ROSENGREN; JOHN ROTH; PHLISHA SCOHY; TERRI

SEAGRAVER; CHRISTINA SHERBURN, GREGORY SHERBURN; CRYSTAL SHERBURN,

JORDAN OLIVER-GREY, ROBERT PAUL GREY; ANDREE SILVA; TIMOTHY L. SIMS;

FRANK SNIDER, SYDNEY SNIDER; APRIL SPENCE; ROBERT SPENCE, SARA SPENCE,

SPENCE'S GUIDE SERVICE; ELLIOT H. STEELE; CARL STEWART, CIMERON GOGGIN;

AMANDA STRAIN; LUCINDA STURDEVANT; JANINE SUATOWSKI; DINAH

SULIPECK; SALVADOR TELLO; ANN G. THOMASON; EILEEN TIRATERRA, LOUIS

TIRATERRA, CASEY TIRATERRA; JAMES TIRATERRA; NELLARIE J. TITUS; PHILLIP

B. TITUS; DOUGLAS TOWER; HAROLD TOWER, APRIL TOWER; MARDEE TOWER;

CATHERINE TURNER, RON DRAKE; AARON TUTTLE; ALBERT M. VANDERHOOF;

BAXTER VIRTUE, DEBBIE VIRTUE; JOSEPH WADDELL, JUDY WADDELL; VICKIE

MARIE WALDEN; TARA WARE, CHRIS WARE; LISA WEST; ROBERT S. WHITE,

PARTICIA C. WHITE; THOMAS D. WHITE, MARY WHITE, WHITE LOGGING CO.;

DONALD E. WILHITE, GINGER WILHITE; JESSICA WILSON, RAYMOND WILSON,;

ROSALYNN YAMAMOTO, ("Plaintiffs") hereby bring the following Complaint for damages

against PACIFICORP ("Defendant"), and other as of yet unknown entities and individuals, DOES 1 through 50 (together with PACIFICORP, "Defendants"), as a result of the damages that Plaintiffs sustained in the Slater Fire that began on September 8, 2020.  Plaintiffs allege as follows:

## **INTRODUCTION**

1.    This Complaint arises from a wildfire known as the "Slater Fire" that ravaged Siskiyou and Del Norte counties in California and Josephine County in Oregon.

2.    The Slater Fire ignited on September 8, 2020, near Slater Butte Fire Lookout in the Klamath National Forest, when a dead or rotted, dangerous, diseased, and hazardous white fir tree that was weakened by decay, rot and disease, (the "Subject Tree") failed and fell into and contacted PACIFICORP's powerlines. The Slater Fire spread quickly and caused significant damages to individuals and businesses in its path.  Tragically, the Slater Fire caused two fatalities.  It destroyed approximately 158,000 acres and over 200 structures, including the Happy Camp and Karuk tribal communities.   Many other structures were damaged.   The Slater deeply affected Plaintiffs by, among other things, destroying their real and personal property, and taking an unimaginable emotional and physical toll on them.



*Image of Happy Camp Taken September 12, 2020*[1]

---

[1] Photo published in the Mt. Shasta news, available here: https://www.mtshastanews.com/picture-gallery/news/2020/09/13/slater-fire-devastation-happy-camp-california-destroyed-homes-

7

3.     The Slater Fire damage and destruction also has negatively impacted the value of property in the area, even undeveloped property, and will continue to affect resale values and development potential for an as-yet-unknown period of time.  The damage and devastation caused by the Slater Fire resulted in widespread economic losses to individuals and businesses throughout the Happy Camp community and nearby region, and it will continue to do so into the future.

4.     Many Plaintiffs in this case are now displaced, forced to live in shelters, tents, or their cars.  They have incurred and will continue to incur costs related to lodging while being displaced.  To be specific, Plaintiffs have each been individually damaged by the Slater Fire.

5.     The Slater Fire was caused the negligent and improper vegetation management, as well as the improper maintenance, inspection, repair, operation and ownership of the electrical distribution system, including the power lines, poles, transformers, conductors, insulators, reclosers, and other electrical equipment owned, operated and maintained by PACIFICORP.

6.     PACIFICORP knew or should have known about the significant risk of wildfires in the area posed by the ongoing and immediate climate, weather, and drought conditions in and around their Northern California service territory, including but not limited to Siskiyou County, California, and the substantially elevated risk of fire ignition resulting from these known and foreseeable conditions.  Defendants knew the majority of Siskiyou County and areas in the Klamath National Forest have been in "Extreme Drought" throughout 2020[2] and also declared that the area of origin was identified as a Tier 3 Extreme Fire Threat area.

7.     Indeed, on September 6, 2020, the National Weather Service issued a red-flag warning for the area surrounding the Slater Butte Fire Lookout, calling for "strong, gusty winds with low relative humidity," and warning "fire danger will likely contribute to a significant spread of new and existing fires."

8.     PACIFICORP failed to reasonably and prudently respond to the red-flag warning.  Indeed, despite the ability and authority to do so, PACIFICORP did not temporarily de-energize

damage/5785109002/ (last accessed Jan. 20, 2021), Hung T. Vu.

[2] See https://www.siskiyoudaily.com/story/news/2020/07/02/much-of-siskiyou-experiencing-extreme-drought/112681850/ (last accessed Jan. 20, 2021).

1    its electrical distribution system or take other necessary steps to protect the safety of communities

2    it serves in and around Siskiyou, Del Norte and Josephine counties.  PACIFICORP also failed to

3    implement its operational procedures via the Public Safety Power Shutoff Program designed to

4    temporarily de-energize the electrical distribution system during times of elevated fire risk.  All

5    this despite that the Public Safety Power Shutoff Program was designed specifically to mitigate

6    the risk of PACIFICORP's electrical distribution system from igniting a fire.

7         9.    Further, PACIFICORP had a duty to properly maintain its electrical distribution

8    system to ensure its safe operation, including by adequately designing, constructing, monitoring,

9    maintaining, operating, repairing, replacing, and/or improving the system.  This duty included

10   inspecting and managing vegetation around its power lines and or other equipment given the

11   foreseeable risk of such vegetation coming into contact with said equipment and starting fires.

12        10.    In fact, the Subject Tree was near PACIFICORP's power lines such that prudent

13   inspection of trees in the area surrounding PACIFICORP's electrical distribution system would

14   have revealed the rot and hazardous nature of the Subject Tree, including the  overall prevalence

15   of rot and hazard trees in the immediate vicinity of equipment that is known to start fires.  Even

16   though PACIFICORP knew their electrical distribution system was old and aging, unsafe, and or

17   vulnerable to known and foreseeable weather and environmental conditions, it failed to fulfill these

18   duties, and failed to take preventative measures in the face of a red-flag warning and other known

19   high-risk fire conditions.

20                          **JURISDICTION AND VENUE**

21        11.    This Court has jurisdiction over this matter under the California Code of Civil

22   Procedure § 410.10 because Defendants, including PACIFICORP, have conducted significant

23   business in the State of California so as to render the exercise of jurisdiction over Defendants by

24   California courts reasonable and consistent with the traditional notions of fair play and substantial

25   justice.  At all times relevant, PACIFICORP acted to provide electrical services to members of the

26   public in California.  At all times relevant, Defendants harmed and/or otherwise caused losses to

27   Plaintiffs who are members of the public in California and Oregon.

28        12.    Venue is proper in this Court because, at all times relevant, Defendant

1  PACIFICORP was and is a foreign corporation making venue is proper in any County in

2  California.  *See* Cal. Civ. Proc. Code § 395(a).

3  **PARTIES**

4      13.    Plaintiffs are now and at all times herein mentioned were individual residents,

5  entities, and/or businesses that resided in and/or had property located in California and Oregon,

6  and suffered varying types of injuries, damages, losses, and/or harm as a result of the Slater Fire.

7      14.    Plaintiffs have elected to join their individual lawsuits in a single action pursuant

8  to the rules of permissive joinder.  Plaintiffs do not seek class certification or relief on a class-wide

9  or collective basis.  Rather, Plaintiffs seek the damages and other remedies identified herein on an

10  individual basis according to proof at trial.

11      15.    Defendant PACIFICORP was and is an Oregon corporation conducting business as

12  a public utility in Northern California.  PACIFICORP engages in the business of generating,

13  transmitting, and distributing electric energy in portions of Northern California and serves

14  approximately 45,000 electric service retail customers in Siskiyou, Shasta, Del Norte, and Modoc

15  Counties in California.

16      16.    PACIFICORP's principal place of business is at 825 NE Multnomah Street, Suite

17  2000, Portland, Oregon 97232.  PACIFICORP also has a California office located at 300 South

18  Main Street, Yreka, California 96097.

19      17.    PACIFICORP is both an "Electrical Corporation" and a "Public Utility" pursuant

20  to, respectively, §§ 218(a) and 216(a) of the California Public Utilities Code.  It is in the business

21  of providing electricity to Northern California residents, businesses, and properties therein,

22  including Plaintiffs, through its electrical distribution system network, including electrical

23  transmission and distribution power lines.

24      18.    The true names and capacities, whether individual, corporate, associate, or

25  otherwise of Defendants DOES 1 through 50, inclusive are unknown to Plaintiffs at this time.  As

26  such Plaintiffs sue said Defendants as DOE Defendants pursuant to California Code of Civil

27  Procedure ("CCP") § 474.

28      19.    "Defendants" refers collectively to PACIFICORP and Does 1 through 50.

20.    Plaintiffs are informed and believe that Defendants were the agents and or employees of each other in acting and or failing to act as alleged herein, and that each was acting in the course and scope of said agency and or employment relationship for the acts alleged herein.

21.    Plaintiffs are informed and believe that Defendants conducts regular, sustained, and continuous business in California and specifically in Siskiyou County, California.

22.    Plaintiffs are informed and believe that Defendants owns and/or operates power lines and other electrical distribution system equipment in California to transmit, supply, and provide electricity to California consumers.

23.    Plaintiffs further allege that each DOE Defendant is in some manner responsible for the acts and occurrences set forth in this Complaint.  Plaintiffs may amend or seek to amend this Complaint to allege the true names, capacities, and responsibility of these DOE Defendants once they are ascertained, and to add additional facts and/or legal theories.  Plaintiffs make all allegations contained in this Complaint against all Defendants, including DOES 1 through 50 pursuant to CCP § 474.  Some or all of the DOE Defendants may be residents of the State of California.  At all times mentioned herein, Defendants, and/or each of them, are responsible in some manner for the conduct alleged herein, including, without limitation, furnishing the means and or acting in capacities that create agency, respondent superior, co-venturer, and/or predecessor- or successor-in-interest relationships with the Defendants.  The DOE Defendants are private individuals, associations, partnerships, corporations, or otherwise that actively assisted and participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Plaintiffs.

**PACIFICORP SUPPLIES ENERGY TO CALIFORNIANS**

24.    PACIFICORP supplies electricity and energy to several Counties in Northern California, including Siskiyou County.  PACIFICORP owns, installs, designs, constructs, operates, inspects, uses and maintains overhead power lines and or electrical equipment for the purpose of transmitting and distributing electricity and energy to their retail consumers pursuant to any and all applicable state, county, city, statutory, administrative and common law, and all other applicable laws, regulations, orders and standards. PACIFICORP's electrical lines, systems

1    and equipment were located at and around the origin of the Slater Fire.

2        25.    The electrical distribution system, including but not limited to electrical facilities,

3    powerlines, conductors, power poles, conductors, reclosers, and all other electrical equipment, are

4    inherently dangerous and hazardous instrumentalities, and PACIFICORP knows this.    The

5    transmission and distribution of electricity requires PACIFICORP to exercise an increased level

6    of care commensurate with and proportionate to the increased risk of danger associated with their

7    electrical distribution system.

8        26.    The conditions and circumstances existing at the time of the ignition at the Slater

9    Fire's origin were reasonably foreseeable by a reasonable and prudent person and were in fact

10    reasonably foreseeable and expected by Defendants, including PACIFICORP, and each of them.

11        27.    At all relevant times, PACIFICORP had, undertook and continues to have a non-

12    transferable, non-delegable duty to properly construct, inspect, repair, maintain, manage, and/or

13    operate its power lines and/or other electrical equipment, and to conduct proper vegetation

14    management and inspections, and keep vegetation properly trimmed at a safe distance so as to

15    prevent foreseeable contact with its system and equipment.

16        28.    Plaintiffs are informed and believe that Defendants are responsible for maintaining

17    vegetation near, around, and in proximity to their system and equipment in compliance with federal

18    and state regulations and permits, including but not limited to California Public Resources Code

19    §§ 4292 and 4293, and CPUC General Orders 95 and 165, and Special Use Permits.    Defendants

20    were aware of the risks posed by their electrical distribution system, including the importance of

21    proper vegetation management practices.    But Defendants have abdicated their duties and as a

22    result exposed the public to unacceptable risk.

23        29.    In the construction, inspection, repair, maintenance, management, ownership,

24    and/or operation of its EDS, PACIFICORP had an obligation to comply with a number of statutes,

25    regulations, permits, and standards, including, but not limited to: Public Utilities Code § 451;

26    Public Resource Code ("PRC") §§ 4292, 4293, and 4435; and CPUC General Orders 95 and 165,

27    and OAK 402911.

28    / / /

## **PACIFCORP'S KNOWS CALIFORNIA IS IN DROUGHT AND THAT THERE ARE DANGEROUS FIRE CONDITIONS**

30.     PACIFICORP is the electrical provider in the area where the Slater Fire ignited, and PACIFICORP owns and operates a transmission line that runs near the Slater Butte Fire Lookout.

31.     At all times relevant, Defendants were aware that the State of California had been in a multi-year period of drought. Defendants were also aware that portions of Siskiyou County frequently experience high wind conditions, which are highly conducive to the rapid spread of wildfires and extreme fire behavior. Such winds are not abnormal or unforeseeable.

32.     On January 17, 2014, the Governor issued an Executive Order proclaiming a State of Emergency throughout the State of California due to severe drought conditions which had existed for four years. On November 13, 2015, the Governor issued Executive Order B-36-15, which proclaimed "[t]hat conditions of extreme peril to the safety of persons and property continue to exist in California due to water shortage, drought conditions and wildfires ...." *See* Executive Order B-36-15, Office of Gov. Edmund Brown, Jr. (November 13, 2015).

33.     According to records maintained by Cal Fire, electrical equipment was tied as the third leading cause of wildfires in California during 2014, the latest year such statistics have been published.[3] PACIFICORP knew of the foreseeable danger of wildfire when its power lines came into contact with vegetation.

34.     Indeed, PACIFCORP'S Public Safety Power Shutoff Program was designed specifically to mitigate the risk of PACIFCORP'S electrical distribution system from igniting a fire.  But PACIFICORP also failed to implement its operational procedures via the Public Safety Power Shutoff Program in the days and minutes leading to the Slater Fire, even in the face of a red-flag warning.

/ / /

---

[3] *See* Historical Wildfire Activity Statistics (Redbooks), Cal. Fire, https://fire.ca.gov/media/10062/2014_redbook_complete.pdf (last accessed January 7, 2021).

35.    In fact, on September 6, 2020, the National Weather Service issued a red-flag warning for the area surrounding the Slater Butte Fire Lookout, calling for "strong, gusty winds with low relative humidity," and warning "high fire danger will likely contribute to a significant spread of new and existing fires."  Nonetheless, PACIFICORP did not de-energize its powerlines in the area of the Slater Butte Fire Lookout.

## PACIFCORP'S EQUIPMENT IGNITES THE SLATER FIRE

36.    On September 8, 2020, the Subject Tree—a dead or rotted, dangerous, diseased, and hazardous white fir tree that was weakened by decay, rot and disease—failed and fell into and contacted PACIFICORP's powerlines near the Slater Butte Fire Lookout, igniting the Slater Fire. The Slater Fire spread quickly and caused significant damages to individuals and businesses in its path.

37.    Plaintiffs are informed and believe that the Slater Fire occurred because: (1) PACIFICORP's utility infrastructure was intended, designed, and constructed to pass electricity through exposed powerlines in dry, vegetated areas; (2) PACIFICORP negligently, recklessly, and willfully failed to prudently and safely inspect, maintain, and operate the electrical equipment in its utility infrastructure (including failing to de-energize its powerlines in times of high fire risk); and/or (3) PACIFICORP negligently, recklessly, and willfully failed to maintain the appropriate clearance area between the electrical equipment in its utility infrastructure and surrounding vegetation, including the Subject Tree.

38.    The conditions and circumstances surrounding the ignition of the Slater Fire, including the nature and condition of PACIFICORP's electrical infrastructure, low humidity, strong winds, and tinder-like dry vegetation were foreseeable by any reasonably prudent person and, therefore, were certainly foreseeable to Defendants—those with special knowledge and expertise as electrical services providers and their employees and agents. In fact, prior to the Slater Fire, PACIFICORP had identified the Happy Camp area as an extreme risk area, where topography, historical fires and local fuel conditions put it at higher danger.

39.    This wildfire was not the result of an "act of God" or other force majeure. This wildfire was started by sparks from high-voltage transmission lines, distribution lines,

1   appurtenances, and other electrical equipment within PACIFICORP's utility infrastructure that

2   ignited surrounding vegetation. Despite knowing of an extreme fire risk, Defendants deliberately

3   prioritized profits over safety. This recklessness and conscious disregard for human safety was a

4   substantial factor in bringing about the Slater Fire.

5   **<u>FIRST CAUSE OF ACTION</u>**

6   **INVERSE CONDEMNATION**

7   **(Against All Defendants)**

8   40.   Plaintiffs hereby re-allege and incorporate by reference each and every allegation

9   contained above as though the same were set forth herein in full.

10   41.   Article 1, § 19 of the California Constitution states:

11   Private property may be taken or damaged for public use only
with just compensation, ascertained by a jury unless waived, has

12   first been paid to, or into court for, the owner. The Legislature
may provide for possession by the condemnor following

13   commencement of eminent domain proceedings upon deposit in
court and prompt release to the owner of money determined by the

14   court to be the probable amount of just compensation.

15   42.   Defendants are a privately-owned public utility company transmitting power to the

16   public in California and are thus subject to inverse condemnation liability. *Barham v. Southern Cal.*

17   *Edison Co.*, (1999) 74 Cal.App.4th 744, 751.

18   43.   Defendants' maintenance, inspection, repair, operation, management, supervision,

19   and ownership of its electrical distribution system were a substantial cause of Plaintiffs' damages,

20   are a public improvement for a public use, and constitute an "Electrical Plant" pursuant to California

21   Public Utilities Code section 217.

22   44.   On August 15, 2019, the Supreme Court of California published its holding for the

23   *City of Oroville v. Superior Court* (7 Cal. 5th 1091). In that case, the Court articulated that, "useful

24   public improvements must eventually be maintained and not merely designed and built. So the

25   inherent risk aspect of the inverse condemnation inquiry is not limited to deliberate design or

26   construct of public improvement. It also encompasses risks from maintenance or continued upkeep

27   of the public work." (7 Cal. 5th 1091 at 1106). Defendants have a responsibility to maintain and

28   continuously upkeep their electrical distribution system to ensure safe delivery of electricity to the

1   public.

2       45.     Defendants' electrical distribution systems as deliberately designed and constructed,

3   present an inherent danger and risk of fire to private property. In acting in furtherance of the public

4   objective of supplying electricity, Defendants took and did take on or around September 8, 2020, a

5   known, calculated risk that property would be damaged and destroyed by fire.

6       46.     PACIFICORP had a legal duty to perform inspections of all overhead electric

7   facilities as required by CPUC General Order 165. An inherent risk of PACIFICORP not

8   performing vegetation management and/or inspections of its overhead electrical equipment is

9   causing the ignition of a wildfire.

10      47.     Plaintiffs are informed and believe, and thereon allege that PACIFICORP failed to

11  maintain clearances between its energized conductors and trees and limbs as required by Public

12  Resources Code § 4293, and/or failed to inspect its overhead electrical equipment in accordance

13  with the requirements of CPUC General Order 165 to identify overhead electrical equipment

14  which was in disrepair and/or required replacement. Plaintiffs are informed and believe that

15  PACIFICORP's failure to maintain the required clearances, failure to perform the required

16  inspections and/or failure to design and construct its overhead electrical equipment to ensure that

17  its equipment did not ignite a wildfire was the result of PACIFICORP's policy choice to benefit

18  from the cost savings from declining to pursue a reasonable maintenance and inspection program.

19      48.     Prior to and one September 8, 2020, Defendants' design, development,

20  construction, installation, control, management, maintenance, inspection, ownership and operation

21  of their electrical distribution system constituted a public improvement for a public use and were

22  a substantial cause of Plaintiffs' damages.

23      49.     Defendants owned and substantially participated in the planning, approval,

24  construction and operation of the electrical distribution system and public improvements for the

25  supplying of electricity.  Defendants exercised control and dominion over the said electrical

26  distribution system and public improvements as a public project and public benefit.

27      50.     PACIFICORP'S electrical distribution system as deliberately designed and

28  constructed presents an inherent danger and risk of fire to private property.  In acting in furtherance

1  of the public objective of supplying electricity, Defendants took and did take on or about
2  September 8, 2020, a known risk that private property would be damaged and destroyed by fire.

3      51.    This inherent risk associated with PACIFICORP'S electrical distribution system
4  was realized on or about September 8, 2020, when PACIFICORP'S electrical distribution system
5  ignited the Slater Fire, which directly and legally resulted in the taking of Plaintiffs' private
6  property and deprived Plaintiffs of the use and enjoyment of their property.

7      52.    This taking was legally and substantially caused by Defendants' actions and/or
8  inactions in designing, constructing, installing, controlling, operating, using, and/or maintaining
9  the facilities, lines, wires, and/or other electrical equipment within Defendants' utility
10 infrastructure and/or PACIFICORP'S electrical distribution system.

11     53.    Plaintiffs have not received adequate compensation for the damage to and/or
12 destruction of their property, which constitutes a taking of Plaintiffs' property by Defendants
13 without just compensation.

14     54.    The conduct as described herein was a substantial factor in causing damage to a
15 property interest protected by the Fifth Amendment of the U.S. Constitution and Article I, § 19, of
16 the California Constitution.  As a direct and legal result of the damages to Plaintiffs' property as
17 described herein, including loss of use and enjoyment, interference with access, diminution in
18 value and/or marketability of real property and destruction and/or damage of personal property,
19 Plaintiffs have been damaged in an amount to be shown according to proof at trial.

20     55.    Under and pursuant to CCP § 1036, Plaintiffs are entitled to recover all litigation
21 costs and expense with regard to the compensation of damage to properties, including attorney's
22 fees, expert fees, consulting fees and litigation costs.

23                               **SECOND CAUSE OF ACTION**

24                                    **NEGLIGENCE**

25                             **(Against All Defendants)**

26     56.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation
27 contained above as though the same were set forth herein in full.

28     57.    Defendants have a nondelegable duty to apply a level of care commensurate with

1  and proportionate to the danger of designing, inspecting, engineering, constructing, operating, and

2  maintaining electrical transmission and distribution systems, inclusive of vegetation clearance.

3      58.    Defendants have a nondelegable duty of vigilant oversight in the maintenance,

4  inspection, repair, operation, management, supervision, and ownership appropriate to the changing

5  conditions and circumstances of their electrical transmission and distribution systems.

6      59.    Defendants, and each of them, have special knowledge and expertise far beyond that

7  of a layperson, that they were obligated and required to use in the design, engineering, construction,

8  use, operation, inspection, repair, and maintenance of electrical infrastructure, lines, equipment, and

9  surrounding vegetation to assure safety under the local conditions of the service area, including but

10  not limited to, those conditions that have been identified herein.

11      60.    Defendants were and are in a special relationship to Plaintiffs. As a supplier of

12  electrical power to the Plaintiffs, PACIFICORP'S operation of its electrical equipment was

13  intended to and did directly affect the Plaintiffs.  It was foreseeable that a massive wildfire would

14  destroy personal and real property, force residents in the fire area to evacuate, and prevent

15  customers of businesses located within the fire area from patronizing those businesses. The

16  Plaintiffs suffered injuries which were clearly and certainly caused by the Slater Fire, resulting in

17  evacuations and relocations, and the cost to repair and replace their damaged and destroyed real

18  and personal property.

19      61.    Public policy supports finding a duty of care in this circumstance due to

20  Defendants' violation of California Civil Code §§ 3479, 34890, Public Utilities Code § 2106 and

21  Health & Safety Code § 13007.

22      62.    Prior to the subject fire, PACIFICORP hired, retained, contracted, allowed, and/or

23  otherwise collaborated with Doe Defendants and/or other parties, to perform work along and

24  maintain the network of distribution lines, infrastructure, and vegetation. The work for which the

25  DOE Defendants were hired involved a risk of fire that was peculiar to the nature of the agency

26  relationship. A reasonable property/easement owner and/or lessee, in the position of the

27  PACIFICORP knew, or should have recognized, the necessity of taking special precautions to

28  protect adjoining property owners against the risk of harm created by work performed, work to be

1    performed and/or work otherwise not performed.

2        63.    Defendants, and each of them, knew or should have known that the activities of DOE

3    Defendants, and/or other parties, involved a risk that was peculiar to the operation of

4    PACIFICORP's business that was foreseeable and arose from the nature and/or location of the work.

5    Notwithstanding the above, Defendants, and each of them, failed to take reasonable precautions to

6    protect adjoining property owners against the foreseeable risk of harm created by their activities.

7        64.    The Slater Fire was a direct and legal result of the negligence, carelessness,

8    recklessness, and/or unlawfulness of Defendants and DOES 1 through 50 who breached their

9    respective duties owed individually and/or collectively to Plaintiffs, and each of them, including

10   but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or

11   professional standards of care; (2) failing to timely and properly maintain, manage, inspect, and/or

12   monitor the subject power line and vegetation; (3) failing to conduct reasonable vegetation

13   management, and properly cut, trim, and/or otherwise keep vegetation at a sufficient distance to

14   avoid foreseeable contact with Defendants' EDS; (4) failing to trim, prune, and/or remove

15   vegetation, including the dead or rotted, dangerous, diseased, and hazardous white fir tree that was

16   weakened by decay and disease, in the vicinity of Defendants' power lines prior to the Slater Fire,

17   so as to avoid creation of a safety hazard within close proximity to the Subject power line; (5)

18   failing to make overhead lines safe under all the exigencies created by surrounding circumstances

19   and conditions; (6) failing to conduct adequate, reasonably prompt, proper, effective, and/or

20   frequent inspections of the EDS; (7) failing to design, construct, monitor, and/or maintain high

21   voltage electrical distribution lines in a manner that avoids the potential to ignite a fire during long,

22   dry seasons by allowing vegetation to grow in an unsafe manner; (8) failing to keep EDS in a safe

23   condition at all times to prevent fire; (9) failing to implement PSPS, and/or de-energize power

24   lines prior to starting the Slater Fire during fire prone conditions; (10) failing to de-energize power

25   lines after the Slater Fire ignited; and/or (11) failing to properly train and supervise employees and

26   agents responsible for maintenance and inspection of the distribution lines and/or vegetation areas

27   near those lines.

28       65.    These failures by Defendants resulted in the dead or rotted, dangerous, diseased,

1  and hazardous Subject Tree that was weakened by decay and disease, failing and falling into and

2  across Defendants' power lines, causing the Slater Fire.

3       66.    As a further direct and legal result of Defendants' actions and/or omissions,

4  Plaintiffs sustained loss and/or damage including but not limited to: (1) damage to property,

5  including the loss of vegetation, trees, structures, and personal property including items of peculiar

6  value to Plaintiffs such as irreplaceable ancestorial tribal heirlooms and historic sacred sites; (2)

7  discomfort, annoyance, inconvenience, loss of quiet enjoyment, mental anguish, and emotional

8  distress; (3) loss of income, increased expenses due to displacement and/or other consequential

9  economic losses including but not limited to costs relating to storage, clean-up, disposal, repair,

10  depreciation, and/or replacement of their property; (4) the creation of hydrophobic soil conditions,

11  and a loss of use, benefit, goodwill, diminution in value, and/or enjoyment of such property; (5)  ,

12  the amount of which will be proven at trial.

13       67.    The potential harms to Plaintiffs from the Slater Fire were objectively foreseeable

14  both in nature and in scope and were subjectively known to Defendants from their experience and

15  business activities conducted in the area where the Slater Fire ignited.

16       68.    The property damage and economic losses occasioned by the Slater Fire are the direct

17  and proximate result of the ongoing custom and practice of Defendants' election to consciously

18  disregard the safety of the public and to refuse to comply with statutes, regulations, standards, and

19  rules regarding Defendants' business operations. Despite having caused death, injury and extensive

20  property damage and economic loss, the Defendants have continued to act in conscious disregard

21  for the safety and rights of others and have ratified the unsafe conduct of their employees.

22       69.    As set forth above and as will be shown by proof, there is a high degree of certainty

23  that Plaintiffs have suffered those injuries and damages, and that there is an extremely close

24  connection between those injuries and damages and Defendants' conduct.  A high degree of moral

25  blame is attached to Defendants' conduct, and the policy of preventing future harm justifies both

26  the recognition of the existence of a duty of care owed by Defendants to all Plaintiffs and the

27  imposition of all damages described above.

28  / / /

70.     Further, the conduct alleged herein was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, constituting oppression, for which Defendants must be punished by punitive and exemplary damages in an amount according to proof. Defendants' conduct evidences a conscious disregard for the safety of others, including Plaintiffs.  Defendants' conduct was and is despicable conduct and constitutes malice and defined by Civil Code § 3294.  An officer, director, or managing agent of Defendants personally committed, authorized, and/or ratified the despicable conduct alleged herein. Plaintiffs are entitled to an award of punitive damages sufficient to punish and make an example of these Defendants.

### THIRD CAUSE OF ACTION

**PUBLIC NUISANCE**

**(Against All Defendants)**

71.     Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

72.     At all times relevant herein, Plaintiffs were the owners and residents of property damaged by the Slater Fire.

73.     Defendants actions, conduct, omissions, negligence, trespass, and failure to act resulted in a fire hazard, creating a foreseeable obstruction to the free use of Plaintiffs' property, invaded the right to use the Plaintiffs' property and interfered with the enjoyment of Plaintiffs' property, causing Plaintiffs to suffer unreasonable harm and substantial actual damages constituting a nuisance, pursuant to California Civil Code section 3479.

74.     As a direct and proximate result of the conduct of Defendants, Plaintiffs sustained loss and damage including but not limited to damage to property, discomfort, annoyance, inconvenience, loss of quiet enjoyment, mental anguish and emotional distress, the amount of which will be proven at trial.

/ / /

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

### PRIVATE NUISANCE

### (By All Plaintiffs Against All Defendants)

75.     Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

76.     Plaintiffs own and/or occupy real property within the Slater Fire perimeter.  At all times relevant herein, Plaintiffs have had a right to occupy, enjoy and/or use their property without interference by Defendants.

77.     Defendants' actions, conduct, omissions, negligence, trespass, and failure to act resulted in a fire and foreseeable obstruction to the free use of Plaintiffs' property, invaded the right of Plaintiffs to use their property, and interference with Plaintiffs' enjoyment of their property, causing Plaintiffs unreasonable harm and substantial actual damages constitution a nuisance under Civil Code § 3476.

78.     As a direct and proximate result Defendants' conduct, Plaintiffs seek the reasonable costs of repair and/or restoration of their properties to their original condition and/or loss of use damages, as allowed under Civil Code § 3334.

79.     Plaintiffs have suffered and will continue to suffer damages, including but not limited to damage to property, discomfort, annoyance, and emotional distress in an amount to be proven at trial.

80.     Defendants' conduct was willful, wanton, and with a conscious disregard for the safety of others.  Accordingly, Defendants acted with malice towards Plaintiffs.  Plaintiffs are therefore entitled to exemplary/punitive damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### TRESPASS

### (Against All Defendants)

81.     Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

82.     At all relevant times herein, Plaintiffs owned, rented, and/or otherwise lawfully

1  occupied real properties in and around the area of the Slater Fire.

2    83.    Defendants negligently and/or recklessly allowed the Slater Fire to ignite and/or

3  spread, which caused damage to Plaintiffs' properties.

4    84.    Plaintiffs did not grant permission for this or any fire to enter their properties.

5    85.    This trespass was a substantial factor in causing the harms suffered by Plaintiffs,

6  including but not limited to damage to and/or destruction of real property, structures, personal

7  property, as well as harms and/or damages related to discomfort, annoyance, inconvenience,

8  mental anguish, loss of quiet enjoyment, and emotional distress.

9    86.    Defendants, including one or more PACIFICORP officers, directors, and/or

10  managers, acted recklessly and with conscious disregard to the rights and safety of Plaintiffs, and

11  this reckless and conscious disregard was a substantial factor in bringing the Slater Fire.  This

12  conduct was despicable and oppressive.  Plaintiffs therefore seek punitive damages in an amount

13  sufficient to punish Defendants and deter such conduct in the future.

14    87.    Plaintiffs each individually seek damages to be determined according to proof at

15  trial.

16    **<u>SIXTH CAUSE OF ACTION</u>**

17    **VIOLATION OF PUBLIC UTILITIES**

18    **CODE § 2106**

19    **(Against All Defendants)**

20    88.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation

21  contained above as though the same were set forth herein in full.

22    89.    California Public Utilities Code § 2106 creates a private right of action against "[a]ny

23  public utility which does, causes to be done, or permits any act, matter, or thing prohibited or

24  declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the

25  Constitution, any law of this State, or any order or decision of the commission . . .."

26    90.    As a Utility and employees of a Utility, Defendants are legally required to comply

27  with the rules and orders promulgated by the CPUC pursuant to California Public Utilities Code

28  section 702. Defendants at all times herein had a duty to properly design, construct, operate,

maintain, inspect, and manage its electrical infrastructure as well as trim trees and vegetation in compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) California Code of Civil Procedure § 733; (d) California Public Resources Code §§ 4292, 4293, and 4435; and (e) California Public Utilities Code § 451.

91.    As Utilities, Defendants and DOES 1 through 50 are legally required to comply with the Rules, General Orders, and Directives promulgated and or otherwise issued by the CPUC pursuant to California Public Utilities Code § 702.

92.    Utilities such as Defendants that perform or fail to perform something required to be done by the California Constitution, a law of the State, or a regulation, Rule, or Order of the CPUC, which leads to the loss or injury, is liable for that loss, damage or injury, pursuant to Public Utilities Code § 2106.

93.    As Utilities, Defendants are required to provide, maintain, and service equipment and facilities in a manner adequate to maintain the safety, health and convenience of their customers and the public, pursuant to Public Utilities Code § 451.

94.    Defendants are required to design, engineer, construct, operate and maintain electrical supply lines in a manner consonant with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service, pursuant to CPUC General Order 95, Rule 33.1 and CPUC General Order 165.

95.    The violation of a legislative enactment or administrative regulation which defines, and minimum standard of conduct is unreasonable per se.

96.    Defendants, and each of them, violated the above listed requirements, by: (a) failing to service, inspect or maintain electrical infrastructure, structures and vegetation affixed to and in close proximity to high voltage electrical lines; (b) failing to provide electrical supply systems of suitable design; (c) failing to construct and to maintain such systems for their intended use of safe transmission of electricity considering the known conditions of the dry season and vegetation of the area, resulting in susceptibility to the ignition and spread of fire and in the fire hazard and danger of

electricity and electrical transmission and distribution; (d) failing to properly design, construct, operate, maintain, inspect and manage its electrical supply systems and the surrounding arid vegetation resulting in said vegetation igniting and accelerating the spread of the fire; (e) failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of the Defendants; and (f) failing to comply with the enumerated legislative enactments and administrative regulations.

97.    Defendants, and each of them, proximately and substantially caused the destruction, damage, and injury to Plaintiffs by their violations of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) California Code of Civil Procedure § 733; (d) California Public Resources Code §§ 4292, 4293, and 4435; and (e) California Public Utilities Code § 4511.

98.    As alleged herein according to proof, Defendants are liable to Plaintiffs for all losses, damages and injuries caused by and resulting from Defendants' violation of applicable orders, decisions, directions, rules or statutes were adopted, including, but not limited to, those stated in: (a) General Order No. 95, Rules 31.1-31.5, 35, 38, 43, 43.2, 44.1-44.4, and 48-48.1; (b) General Order No. 165; (c) California Code of Civil Procedure § 733; (d) California Public Resources Code §§ 4292, 4293, and 4435; and (e) California Public Utilities Code § 451.

99.    As a direct and proximate result of the conduct of Defendants in violating Pubic Utilities Code § 2106, Plaintiffs sustained losses and damage including but not limited to damage to property, discomfort, annoyance, inconvenience, loss of quiet enjoyment, mental anguish and emotional distress, the amount of which will be proven at trial.

100.    Defendants' conduct was willful and wanton and done with a conscious disregard for the disastrous consequences that Defendants knew could occur as a result of their dangerous conduct. Accordingly, Defendants acted with malice towards Plaintiffs, and therefore, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants, as set forth herein.

101.    Through their omissions, commissions, and conduct alleged herein, Defendants violated Public Utilities Code §§ 702 and 451, and/or CPUC General Orders 95 and 165, thereby

1  making them liable for losses, damages and injury sustained by Plaintiffs pursuant to Public

2  Utilities Code § 2106.

3  <u>**SEVENTH CAUSE OF ACTION**</u>

4  **VIOLATION OF HEALTH &**

5  **SAFETY CODE § 13007**

6  **(Against All Defendants)**

7  102.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation

8  contained above as though the same were set forth herein in full.

9  103.    By engaging in the acts and omissions alleged in this Complaint, Defendants and

10  DOES 1 through 50, and each of them, wilfully, negligently, and in violation of law, set fire to and

11  or allowed fire to be set to the property of another in violation of California Health & Safety Code

12  § 13007.

13  104.    As a legal result of the violation by Defendants and DOES 1 through 50 of

14  California Health & Safety Code § 13007, Plaintiffs suffered recoverable damages to properties

15  under California Health & Safety Code § 13007.

16  105.    As a direct and proximate result of the conduct of Defendants in violating Pubic

17  Utilities Code § 2106, Plaintiffs sustained losses and damage including but not limited to damage

18  to property, discomfort, annoyance, inconvenience, loss of quiet enjoyment, mental anguish and

19  emotional distress, the amount of which will be proven at trial.

20  106.    As a further legal result of the violation of California Health & Safety Code § 13007

21  by Defendants and DOES 1 through 50, Plaintiffs suffered damages that are entitled to reasonable

22  attorneys' fees under CCP § 1021.9 for the prosecution of this cause of action.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

COMPLAINT FOR DAMAGES

**EIGHTH CAUSE OF ACTION**

**PREMISES LIABILITY**

**(Against All Defendants)**

107.    Plaintiffs hereby re-allege and incorporate by reference each and every allegation contained above as though the same were set forth herein in full.

108.    Defendants were the owners of an easement and/or real property in the area of origin of the Slater Fire, and/or were the owners of electrical infrastructure upon said easement and/or right of way.

109.    Defendants acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to property inspect, manage, maintain, and/or control the vegetation near their electrical infrastructure along the real property and easement, allowing an unsafe condition presenting a foreseeable risk of fire danger to exist in said area.

110.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs suffered and continue to suffer the injuries and damages set forth above.

111.    As a further direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants as set forth above.

**PRAYER FOR RELIEF**

Plaintiffs seek the following damages in an amount according to proof at the time of trial:

**For Inverse Condemnation**

(1)    Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

(2)    Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal properties;

(3)    Loss of wages, earning capacity and/or business profits and/or any related displacement expenses;

(4)    All costs of suit, including attorneys' fees, expert fees and related costs;

(5)    Any and all relief, compensation, or measure of damages available to Plaintiffs by law

COMPLAINT FOR DAMAGES

1    based on the injuries and damages suffered by Plaintiffs;

2    (6)    Prejudgment interest from September 8, 2022, all according to proof; and

3    (7)    For such other and further relief as the Court shall deem proper, all according to proof.

4    **For All Other Causes of Action**

5    (1)    Injunctive relief ordering that Defendants, and each of them, stop continued

6    violations of (a) General Order 95, Rules 31.1-31.5, 38, 42, 43.2, 44.1-44.4 and 48-48.1; (b) General

7    Order 165; (c) California Public Resources Code §§ 4292, 4293, and 4435; and (d) California Public

8    Utilities Code § 451;

9    (2)    General and/or special damages for all damages to property according to proof;

10    (3)    Loss of the use, benefit, goodwill, and enjoyment of Plaintiffs' real and/or personal

11    property;

12    (4)    Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or

13    any related displacement expenses;

14    (5)    Evacuation expenses and alternate living expenses;

15    (6)    Erosion damage to real property;

16    (7)    Past and future medical expenses and incidental expenses;

17    (8)    General damages for personal injury, emotional distress, fear, annoyance,

18    disturbance, inconvenience, mental anguish, and loss of quiet enjoyment of property;

19    (9)    Attorneys' fees, expert fees, consultant fees and litigation costs and expense, as

20    allowed under California Code of Civil Procedure § 1021.9 and/or any other statute;

21    (10)    Treble or double damages for wrongful injuries to timber, trees, or underwood on

22    their property, as allowed under California Civil Code § 3346;

23    (11)    Exemplary damages in an amount according to proof as allowed under California

24    Civil Code § 3294;

25    (12)    Exemplary damages for wrongful injury to animals in an amount according to proof

26    under California Civil Code § 3340;

27    (13)    Costs of suit;

28

1    (14)    Prejudgment interest; and

2    (15)    Any and all other and further such relief as the Court shall deem proper, all according

3  to proof;

4                                    **JURY TRIAL DEMAND**

5        Plaintiffs hereby demand a jury trial on all causes of action for which a jury is available

6  under the law.

7

8  DATED: January 29, 2021                    LAW OFFICES OF SHAWN E. CAINE, A.P.C.

9

10                                          By: _____

11                                              Shawn E. Caine
                                                *Attorneys for Plaintiffs*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PACIFICORP and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ERIN HILLMAN; (See "Additional Parties Attachment - Attachment to Summons")

**FILED/ENDORSED**

FEB 03 2021

By: _I. Romo_
Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* SACRAMENTO SUPERIOR COURT<br>720 9th Street<br>Sacramento, California 95814 | CASE NUMBER: *(Número del Caso):*<br>34-2021-00293621 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Shawn E. Caine, Law Offices of Shawn E. Caine, APC, 1221 Camino Del Mar, Del Mar, CA 92014, (858) 350-1600

| DATE:<br>*(Fecha)* FEB 03 2021 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

BY FAX

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hillman, et al. v. PacifiCorp, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

[ x ] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

LEEON HILLMAN, KING FISHER MARKET; DENISE DENEAUX; ROBERT W. WADDELL, DEBRA R. WADDELL; GRANT ABO; WILLIAM GEORGE ADAMS; BALLEI ALLEC; MARA LEI ALLEC, RODNEY W. ALLEC, SR.; LONNIE ANDERSON, ELIZABETH CUSHMAN; DUANE ARMBRUSTER; CANDACE LOUISE ATTO; ANTONE AUBREY, JR.; EARL AUBREY, JR., LISA AUBREY; LESTER AUBREY; JOHN T. BAIN, RUTH A. BAIN; JOHN BANKSTON; FRANCINE BANZALI, FARIS REAL ESTATE; KATHLEEN MARIE BARGER-McCOVEY; JOHN BARNETT; TAMARA BARNETT; EDWIN CHARLES BARTOSIEWSKI, SALLY JO BARTOSIEWSKI; CARL BAUDER; JAMES BAYES; LINDA BIBBS; ROSEMARY BLEY, ROBERT BLEY; WENDY BETH BUCHANAN; GARY BURNETT; ANNA MAE CANTRELL; MATT CARTENSEN, AYELA CARTENSEN; ARTHUR CHACON; BRUCE CHAPMAN; SEBETHIA COLEMAN; MICHAEL R. CONKEY, LYNETTE L. TOTANS; BHRETT CROSS; BARRY DAVIS, LINDA S. DAVIS; DEAN A. DAVIS; MARTA M. DE TELLO; ALAN DECOUX, TINA DECOUX, AL'S GARAGE; JOSE F. DELANNOY, JANICE E. LEMON; ELVIS DOUGLAS, JOSSELYN HILLENBURG; MELODY DUNCAN, MICHAEL DUNCAN, BARBARA BLACK, INDIAN CREEK TRAIL PARK, NATUREGRAPH PUBLISHERS; KIRK A. EADIE, ROBYN EADIE; FORREST EMERSON; JOE B. EMERSON; BRITTANY ETTLEMAN; JOHN VINCENT EVANS, REBECCA LEA EVANS; DIANE FELICICCHIA; BRANDON GARCIA, CHRISTINA GARCIA; PAMELA GEIGER, PATRICK J. REIMER; GAIL L. GOODRICH; RICHARD GOODWIN; ROBERT A. GOODWIN, ELSA R. GOODWIN; DAVID A. GORDON; LEONARD GUINTHER, MARLAINA P. GUINTHER; DALANEA HACKETT, ALBERT HACKETT; DELYLE HACKETT; GARY A. HAHN, CAROL S. HAHN; ARLENE HANSELL; CATHERINE HASKELL; CODY JOSEPH HASKELL; ERIK S. HASKELL; DARREN TODD HENDLEY; BRANDON W. HESS; LYNNE HETHERINGTON; BROCK HIGDON, LINDA HIGDON; SUSAN HILLMAN; ARRON HOCKADAY; KARYN J. HOOK, DONALD M. HOOK; KERA D. HOOK, NICK RUTTER; CHARLES HUG, ANNETTE D. HUG, DANIEL D. HUG; VIRGINA L. HYDE, KURTIS M. BARNES; HALLEE JOBE, DAVID MOEHRING; GORDON DONALD JODD; DEBRA L. JOHNSON; CRYSTAL JONES; SANDRA RACHEL KANE; JOHN D. KILROY, KILROY RANCH; EMILY KINSELLA; JUSTIN KROLL; ROSELLEN LEE, ALYSSA BRINK; DEANNE M. LOGAN, STEPHEN B. LOGAN; FLORENCE M. LOPEZ, JOSE A. LOPEZ; BERNARD G. LOWRY; WILLIAM MALINOWSKI; ROBERT MANNING, KELLIE MANNING; WILLIAM MANZO; PATCHES MARSH; LINDA MARTIN; DONALD DALE MAST; PATRICK MAYFIELD, SHAUNA MAYFIELD, MAYFIELD BUILDERS, NORTH GATE FARM; LAURA MAYTON, JERRY SNIDER, WESLEY MAYTON; IKE McABIER, VICTORIA McABIER; DANIEL M. McCARTHY, SUSAN J. McARTHY; MARIBETH McCRACKER, RAYMOND MOORE; KENNETH M. McCULLEY, DONNA McCULLEY, McCULLEY LOGGING CO.; VICKI LYNN McINNIS; PETE McLAUGHLIN, LEONA McLAUGHLIN; CELIA MELENDEZ, ANDREW F. HOLTKAMP, ANDREW P. HOLTKAMP; JESSICA L. MILLER, GERALD CHURCHILL; BOWDY MINIUM; KATHRYN MOEHRING, LAVERNE MOEHRING; LESLIE NORTON; TAMMY PARASHIS, PHILIP PARASHIS; ROBERT PEREZ, EMMA LEE PEREZ, KLAMATH RIVER ADVENTURES; SHAWN PINE; JERRY POESCHEL, DIANA POESCHEL; KATHY PRICE; CONNIE RASMUSSEN; JASON H. RASMUSSEN; RYAN RASMUSSEN, DENEGE RASMUSSEN; FRANK REECE, WILVERNA REECE; KENNETH RICHARDS, SHERRY RICHARDS; KIRA RILEA, CHRIS WILSON; RENE ROBERTS; CHRISTINA MARIE ROBINSON; DOUGLAS A. ROBINSON, GINA M. ROBINSON; RICHARD ROBISON; TANYA ROSENGREN; JOHN ROTH; PHLISHA SCOHY; TERRII SEAGRAVER-WINSLOW; CHRISTINA SHERBURN, GREGORY SHERBURN; CRYSTAL SHERBURN, JORDAN OLIVER-GREY, ROBERT PAUL GREY; ANDREE SILVA; TIMOTHY L. SIMS; FRANK SNIDER, SYDNEY SNIDER; APRIL SPENCE; ROBERT SPENCE, SARA SPENCE, SPENCE'S GUIDE SERVICE; ELLIOT H. STEELE; CARL STEWART, CIMERON GOGGIN; AMANDA STRAIN; LUCINDA STURDEVANT; JANINE SUATOWSKI; DINAH SULIPECK; SALVADOR TELLO, ANN G. THOMASON; EILEEN TIRATERRA, LOUIS TIRATERRA, CASEY TIRATERRA; JAMES TIRATERRA; NELLARIE J. TITUS; PHILLIP B. TITUS; DOUGLAS TOWER; HAROLD TOWER, APRIL TOWER; CATHERINE TURNER, RON DRAKE; AARON TUTTLE; ALBERT M. VANDERHOOF; BAXTER VIRTUE, DEBBIE VIRTUE; JOSEPH WADDELL, JUDY WADDELL; VICKIE MARIE WALDEN; TARA WARE, CHRIS WARE; LISA WEST; ROBERT S. WHITE, PARTICIA C. WHITE; THOMAS D. WHITE, MARY WHITE, WHITE LOGGING CO.; DONALD E. WILHITE, GINGER WILHITE; JESSICA WILSON, RAYMOND WILSON; ROSALYNN YAMAMOTO

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**