UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN HILLMAN, et al., | No. 2:21-cv-00848-MCE-CKD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| PACIFICORP and DOES 1 through 50, Inclusive, | |
| Defendants. | |

Through this action, Plaintiff Erin Hillman and 269 other individuals and entities ("Plaintiffs") seek to recover property damage sustained as a result of the so-called Slater Fire, a September 2020 conflagration that they allege destroyed some 2,000 structures and burned over 158,000 acres within Northern California's Siskiyou and Del Norte counties. Plaintiffs allege that Defendant PacifiCorp ("Defendant" or "PacifiCorp"), an electrical power provider, caused the fire both by negligent vegetation management and the negligent maintenance, inspection, repair, operation and ownership of its electricity distribution system.

Plaintiffs' lawsuit was commenced by the filing of a complaint in Sacramento County Superior Court on February 1, 2021, that alleged purely state law claims for inverse condemnation, negligence, public and private nuisance, premise liability, and

1

California statutory violations. On May 11, 2021, PacifiCorp removed Plaintiffs' lawsuit to this Court on grounds that one of the 270 named Plaintiffs was the Karuk Tribe ("Tribe"). Defendant's Notice of Removal claimed that because the Tribe's claim involved lands held in Tribal Trust by the United States, the "Indian right of possession" was therefore at stake and presented a "uniquely federal issue" justifying removal on federal question grounds. The Tribe's counsel asked that PacifiCorp stipulate to remand the matter back to state court on grounds that its legal premise for removal was incorrect—the property for which the Tribe sought damage was owned in fee simple and not in trust by the United States government. Defendant's refusal to do so prompted the filing of the two motions now before the Court for adjudication. First, Plaintiffs have moved to remand (ECF No. 8) on grounds that no cognizable federal question conferring jurisdiction on this Court is present. Second, PacifiCorp has filed a motion for leave to amend its notice of removal (ECF No. 13) that adds a different basis for federal question jurisdiction; namely, an argument that because the Slater Fire involved portions of the Klamath National Forest, jurisdiction is also proper under the so-called "federal enclave" doctrine.

As set forth below, PacifiCorp's Motion to Amend is DENIED and Plaintiffs' request that the matter be remanded back to state court is GRANTED.[1]

## BACKGROUND

As indicated above, Defendant removed this action from state court on May 11, 2021, citing federal question jurisdiction under 28 U.S.C. § 1331, solely on grounds that Plaintiffs' First Amended Complaint ("FAC") "asserts causes of action arising under federal law." Def.'s Notice of Removal, ECF No. 1, ¶ 8. According to PacifiCorp, because the Karuk Tribe, one of the 270 named Plaintiffs, claims "injuries to their tribal

---

[1] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

lands," those claims "necessarily depend on a substantial question of federal law, and/or are completely pre-empted by federal law." Id. at ¶ 10.

PacifiCorp asserts no other ground for removal besides this alleged damage to Karuk tribal lands and urges the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over claims pursued by the other 269 named Plaintiffs on grounds that they "rely on the same factual allegations (the Slater Fire) and thus arise from the same "common nucleus of operative fact." Id. at ¶ 16.

After receiving Defendant's Notice of Removal filed May 11, 2021, Plaintiffs' counsel, Joanna Fox, wrote to defense counsel and explained that the Karuk Tribe's property damage claims pertained "only to land that the Tribe owns in fee simple, just like any other property owner," with the Tribe not seeking recovery for damage to any tribal trust or allotment lands.  Fox Decl., ECF No. 8-2, ¶ 2, Ex. A.  As such, Ms. Fox maintained that removal was improper and asked Defendant to stipulate to remand.  She indicated that if she had to file a Notice to Remand she would include a declaration from the Tribal Council Chairman identifying the fee simple land and attaching the relevant deeds.

In reply, Derek Flores, counsel for PacifiCorp, argued that the exclusion of trust lands from the damage being sought was not apparent from the face of the complaint. Even if it was, according to Flores, the fact that the tribe had a "possessory interest" was sufficient to invoke federal jurisdiction.  Id.

This summary rejection of Plaintiffs' jurisdictional position is belied by the fact that while Flores declined to agree to remand, he did ask Plaintiffs whether they would stipulate to PacifiCorp filing an amended notice of removal allowing it "to clarify its basis for asserting federal jurisdiction and by also making clear that the Klamath National Forest is a federal enclave."  Id.  As indicated above, however, the only basis for federal jurisdiction identified in the original removal was the fact that damages were sought for tribal interests allegedly subject to federal jurisdiction.  The Klamath National Forest is

///

3

1 not even mentioned in the Notice of Removal, much less whether that entity qualified as

2 a federal enclave for jurisdictional purposes.[2]

3      Plaintiffs filed their Motion to Remand on June 2, 2021. ECF No. 8. Six days

4 later, PacifiCorp filed its Motion for Leave to File Amended Notice of Removal. ECF

5 No. 13.

6      In moving to remand, Plaintiffs initially argue that PacifiCorp's Notice of Removal

7 was untimely and that consequently the Court lacks jurisdiction on that ground alone.

8 Then, Plaintiffs made the substantive contention they previously advanced; namely, that

9 the FAC did not unequivocally assert the damage to tribal trust land required to confer

10 federal jurisdiction. As support for that proposition, Plaintiffs submitted the Declaration

11 of Russell Atteberry, Karuk Tribal Council Chairman, as they told defense counsel they

12 would. Atteberry asserts that the Tribe seeks to recover by way of this lawsuit only for

13 damages caused by the Slater Fire to property owned by the Tribe in fee simple. He

14 explains that while the Tribe occupies significant amounts of land held in Tribal Trust by

15 the United States government for the benefit of the Karuk people (so-called "tribal trust

16 lands"), that land is not at issue in this lawsuit. Atteberry Decl., ECF No. 8-5, ¶ 5.

17 Instead, he indicates that the damages sought by the Karuk Tribe pertain only to other

18 lands "it owns in fee simple, just like any other property owner in the state of California."

19 Id. at ¶ 4. Atteberry goes on to specify five different parcels totaling 129.75 acres, for

20 which it seeks such damages, and attaches deeds to those parcels attesting to their

21 tribal ownership in fee simple.

22      PacifiCorp's Motion to Amend, filed in response, raises its newly-proffered

23 alternate basis for federal question jurisdiction. Defendant concedes that the original

24 Notice alleges simply that the Karuk Tribe's claims for injuries to their lands implicates

25 federal jurisdiction (Def.'s Mot. to Amend, ECF No. 13, 1:19-20), but seeks to clarify that

---

26     [2] Even Plaintiffs' FAC, upon which removal was predicated, states only that the Slater File initially
27 "ignited" within the Klamath National Forest. ECF No.1-4, ¶ 2. Other than saying that portions of the Klamath National Forest posed an extreme fire danger due to drought conditions, the FAC does not even
28 make it clear that the damaged properties were within the Forest, stating only that they were within Siskiyou and Del Norte counties in California. Id. at ¶¶ 1, 6.

"federal question jurisdiction similarly exists" because federal courts have jurisdiction over claims arising on "federal enclaves," which it claims exists here because the United States acquired exclusive jurisdiction over the Klamath National Forest in 1905. Id. at 1:23-2:1. According to Defendant, because this additional grounds for removal also poses a federal question and does not switch entirely to the other legally recognized basis for removal, diversity of citizenship, leave to amend should be freely granted.

In opposing Plaintiffs' Motion to Remand, while continuing to assert that jurisdiction was proper in the first instance given the alleged damage to Karuk tribal property, PacifiCorp devotes the bulk of its argument to the assertion that federal jurisdiction is established here because a federal enclave is involved.

## STANDARD

### A.    Timeliness of Notice of Removal

28 U.S.C. § 1446(b)(1) allows a defendant to remove an action to federal court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." "Section 1446(b)'s time limit is mandatory such that a timely objection to a late petition will defeat removal." Kuxhausen v. BMX Financial Services NA LLC, 707 F.3d 1136, 1142 n.4 (9th Cir. 2013) (quoting Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th Cir. 1980) (per curiam). The Ninth Circuit has adopted a strict standard in this regard. The period for commencing removal under the statute is "imperative and mandatory, must be strictly complied with, and is to be narrowly construed." United States ex rel. Walker v. Gunn, 511 F.2d 1024, 1026 (9th Cir. 1975).

### B.    Amending Notice of Removal

It is well settled that a defendant's notice of removal may be amended freely prior to the expiration of this initial 30-day period in which removal can be effectuated under 28 U.S.C. § 1446(b). Smiley v. Citibank (S. Dakota), N.A., 863 F. Supp. 1156, 1158-59

(C.D. Cal. 1993) (citing Richardson v. United Steelworkers of Am., 864 F.2d 1162 (5th Cir. 1989), cert. denied, 495 U.S. 946 (1990)). "After the first thirty days, however, the cases indicate that the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds may not be added and missing allegations may not be furnished." Id. at 1159 (citing 14A C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure § 3733 at 537-38 (1985)). "The majority of courts, for example, allow defendants to amend 'defective allegations of jurisdiction' in their notice as long as the initial notice of removal was timely filed and sets forth the same legal grounds for removal." Id. (citing Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969) (permitting amendment of removal petition to cure inadequate allegation of the citizenship of the defendant corporation)).

In ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of the State of Montana, 213 F.3d 1108 (9th Cir. 2000), the Ninth Circuit made clear its agreement with the majority approach: "The Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the [initial] thirty day period.'" Id. at 1117 (quoting O'Halloran v. Univ. of Wash., 856 F.2d 1375, 1381 (9th Cir. 1988)). Wright, Miller & Cooper's latest Federal Practice & Procedure update similarly states its position even more plainly, indicating that after the 30-day removal period, "defendants may amend the notice only to set out more specifically the grounds for removal that already have been stated in the original notice." 14C Wright, Miller and Cooper, § 3733 (4th ed. April 2021 update).

"If the removing party seeks to cure a defect in the removal petition after the thirty day period has elapsed . . . the court has discretion to prohibit such an amendment." Hemphill v. Transfresh Corp., No. C–98–0899–VRW, 1998 WL 320840, at *4 (N.D. Cal. June 11, 1998).

///

///

**C.     Remand**

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. at § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Under § 1141, any state court action that originally could have been filed in federal court may be removed by the defendant.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).

To determine whether the claims are part of the same case or controversy, the Court examines whether the claims involve a "common nucleus of operative fact."  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (requiring a "common nucleus of operative fact" to confer supplemental jurisdiction over pendant state law claims).

A motion to remand is the proper procedure for challenging removal.  "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge, 861 F.2d at 1393 (internal citations omitted).  Courts "strictly construe the

removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the court must grant the motion for remand. Id. Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

## ANALYSIS

### A. Timeliness of Petition for Removal

In its Motion to Remand, Plaintiffs first posit the argument that PacifiCorp's Notice of Removal was untimely filed. Because that argument, if valid, would compel both remand and a denial of Defendant's concurrent request to amend their removal petition, it is addressed first.

As indicated above, 28 U.S.C. § 1446 (b)(1) requires that a notice of removal "be filed within 30 days after the receipt by the defendant, through service or otherwise," of a copy of the pleading setting forth grounds for removal. Plaintiffs contend that because the operative complaint was provided to Defendant by email on March 26, 2021, and because removal was not effectuated until May 11, 2021, well over thirty days later, it was untimely and mandates remand on that ground alone. Pls.' Mot. to Remand, ECF No. 8-1, 7:8-20.

While Plaintiffs claim that defense counsel agreed to accept service of the Complaint in this manner, a copy of which had already been provided as indicated above, the April 2, 2021, email upon which Plaintiffs rely rcontains only a request by defense counsel that Plaintiffs send a notice and acknowledgment of receipt ("NAR"). Fox Decl., ECF No. 8-2, ¶ 4, Ex. B. Defense counsel executed the NAR on April 14, 2021, and returned it to Plaintiffs' counsel by both regular and email that same day. ECF No. 1-5, Ex. E to Def.s' Petition for Removal.

Under California law, which governs the means by which service can be effectuated, a summons is deemed served by NAR on the date the "acknowledgment of receipt of summons is executed and returned." Cal. Civ. Proc. Code § 415.30(c); see Gray v. Extended Stay Am., Inc., No. 2:19-cv-01269-MCE-EFB, 2020 WL 1274265 at *4 (E.D. Cal. Mar. 17, 2020) ("the dispositive date is the day upon which acknowledgment of receipt is executed and returned to the sender"). Because it is uncontroverted that service here was accomplished by NAR, that means that service was effected on April 14, 2020, giving PacifiCorp thirty days thereafter within which to timely remove. The May 11, 2021, removal date fell within that permissible period.

To the extent Plaintiffs argue that the 30-day period for removal begins running from the day defense was initially provided with a copy of the Complaint, that argument rests on an expansive reading of Section 1446(b)'s directive that the period begins upon receipt of the removable pleading, "through service or otherwise." 28 U.S.C. § 1446(b)(1). The Supreme Court has rejected any such interpretation, however, agreeing that "the 'service or otherwise' language was not intended to. . . bypass service as a starter for § 1446(b)'s clock." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999). If Plaintiffs' argument were correct, simply providing a copy of the complaint (along with a notice and acknowledgement of receipt) would trigger the 30-day period, and not the date on which the NAR was actually returned. Case law makes it clear that is not the case. Gray at *4; see also Varga v. United Airlines, No. C 09-02278-SI, 2009 WL 2246208 at *3 (N.D. Cal. July 24, 2009) (removal timely where action removed 30 days after the date the NAR was signed and returned).

This Court accordingly finds removal to have been timely made and rejects Plaintiffs' contention otherwise.

  **B.**  **Amended Notice of Removal**

Before reaching the merits of PacifiCorp's Motion to Remand, the Court must determine the legal grounds upon which it is entitled to rely in justifying removal. As indicated above, Defendant's initial Notice of Removal argues only that a federal

question is present because damage to Karuk tribal lands is implicated by Plaintiffs' lawsuit. In seeking to amend its Notice of Removal, however, PacifiCorp seeks to add as a new basis for removal the so-called "federal enclave" doctrine. Therefore, Defendant now also argues that because the Klamath National Forest should be considered a federal enclave, the fact that the Slater Fire ignited in that Forest and may have damaged portions of it presents yet another federal question supporting the propriety of removal. By deciding whether PacifiCorp should be entitled to assert this additional ground for removal by way of amendment, the parameters under which remand is proper will become clear.

Defendant does not try to argue that issues pertaining to tribal interests are anything other than completely separate from the question of whether lands over which the United States has acquired legislative jurisdiction qualify as federal enclaves. Instead, PacifiCorp argues that because its original Notice was premised on federal question jurisdiction and because the proposed Amended Notice also predicated only upon federal question jurisdiction, the "legal basis" for jurisdiction has not changed and amendment should accordingly be freely permitted. According to Defendant, "the only difference is that the Amended Notice clarifies that the Court similarly has federal question jurisdiction because the Klamath National Forest is a federal enclave." Pls.' Motion to Amend, ECF No. 13, 3: 1-2. Significantly, however, PacifiCorp's original Notice of Removal neither mentions the term "federal enclave" nor refers to any connection with the Klamath National Forest. What Defendant really wants to say is that because both theories fall under the general rubric of federal question jurisdiction they have enough of a connection to be considered similar.

The Court is unpersuaded by this argument. When defendants attempt to assert totally new grounds for removal or "to create jurisdiction where none existed," courts uniformly deny leave to amend. Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Grp., 823 F.2d 302, 304 (9th Cir. 1987), overruled on another ground by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991). Indeed, "the removal petition cannot be . . . amended to

1  add allegations of substance but solely to clarify 'defective' allegations of jurisdiction
2  previously made." 418 F.2d at 317; see also Emeryville Redev. Agency v. Clear
3  Channel Outdoor, No. C 06-01279 WHA, 2006 WL 1390561, at *3 (N.D. Cal. May 22,
4  2006) (discussing "allegations of substance" rule); Hemphill, 1998 WL 320840 at *4
5  (citing Barrow, 418 F.2d at 317); Nat'l Audobon Soc. v. Dep't of Water & Power of City of
6  L.A., 496 F. Supp. 499, 503 (E.D. Cal. 1980) (same).

7        Any argument here that federal enclave jurisdiction is being added simply to
8  "clarify" defective allegations or jurisdiction previously made (to wit, tribal interests) belies
9  all credibility. Rather than correcting diversity allegations that, while defective, were
10 already made, Defendant's motion to amend attempts to add new allegations of
11 substance and assert a totally different ground for federal question jurisdiction based on
12 the separate and distinct theory that Plaintiffs' claims and injuries occurred on a
13 purported federal enclave. The newly submitted federal enclave argument is
14 unquestionably just the kind of "allegation of substance" should not be permitted.

15       Defendant's reliance on Barrow v. Fulton, 418 F.2d 316, is unpersuasive. In
16 Barrow, the defendant's removal notice alleged "simply that plaintiff was a citizen of
17 Alaska and defendant of New York," rather than "disclos[ing] both the state of
18 incorporation and the location of the corporation's principal place of business." 418 F.2d
19 at 318. The Ninth Circuit followed other circuit courts in holding that these "allegations
20 [were] defective in form but not so lacking in substance as to prevent their amendment."
21 Id. (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299 (10th Cir. 1968)).
22 Moreover, the requested amendment to furnish additional allegations supported the
23 already proffered diversity allegations.

24       Here, on the other hand, the jurisdictional bases are completely different. The
25 Ninth Circuit has made it clear that a defendant may not "add a separate basis for
26 removal jurisdiction after the thirty day period" has expired. ARCO, 213 F.3d at 1117
27 (quoting O'Halloran, 856 F.2d at 1381); see also O'Halloran, 856 F.2d at 1381 ("[W]e
28 need not address the issue whether a third-party defendant can base its petition for

11

removal on an alleged federal question presented in the complaint between the original parties," since the third-party defendant "based its petition for removal solely on the facts alleged in the third-party complaint" and "[t]he petition cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.").

Defendant's resort to dicta contained within Smiley v. Citibank misses the mark. The court in that case indicated that a defendant who has invoked federal question jurisdiction "may be justified in switching the applicable code section on which jurisdiction is premised." 863 F. Supp. at 1162. The court's observation in that regard, however, cites National Audubon Society, supra, where the statutory change sought by amendment was "properly viewed as merely a clarification of a defective allegation," rather than an entirely new substantive ground for removal. 496 F. Supp. at 504. That is hardly the case here. Instead, as Smiley also observes, this appears to be "a case where the defendant discovered that the original ground on which it sought removal was baseless and tried to substitute a completely separate and distinct ground to take its place." 863 F. Supp. at 1161. The same conclusion could be drawn with respect to PacifiCorp's motive in the instant matter.

Prohibiting defendants from asserting new grounds for removal after the initial period has passed makes sense, since "[t]his rule serves to prevent defendants from removing cases on questionable substantive grounds to comply with the strict thirty day time limit of § 1446(b) and substituting their stronger arguments later." Isom v. Marg, No. 2:14-cv-4355-SVW, 2014 WL 3546532 at *3 (C.D. Cal. July 17, 2014) (citing Smiley, 863 F. Supp. at 1162). As the Marg court went on to note, "[i]t also spares plaintiffs the burden of having to suddenly respond to a jurisdictional argument to which the notice of removal did not in fact put them on notice." Id. Given all the foregoing, the amendment proposed by Defendant to its original Notice of Removal is improper and Defendant's Motion to Amend in that regard must be denied.

///

///

### C. Remand

Having denied Defendant's request, by way of its Motion to Amend, to consider whether the federal enclave doctrine posed a federal question justifying removal, the Court is left with deciding whether the potential tribal issues in this case, as pled in the initial Notice of Removal, are enough to confer the requisite jurisdiction and defeat Plaintiffs' Motion to Remand.

As indicated above, the FAC itself contains very little detail concerning the nature of the Karuk Tribe's damage claims, a fact not surprising given the fact that the Tribe is only one of 270 named Plaintiffs who seek damages as a result of the Slater Fire. The FAC simply names the Tribe as a party, mentions that portions of the Karuk tribal community were damaged and contends that Plaintiffs' "private property" was affected. FAC, ¶¶ 2, 60. Defendant determined that this was enough to justify removal on grounds that the FAC claimed "injuries to tribal lands" that "necessarily depend on a substantial question of federal law," even though the FAC identified the property as "private." Not. of Removal, ¶ 11.

Plaintiffs' counsel immediately sought to dispel any doubt as to the nature of any Karuk property interest that could have justified Defendant's removal. Ms. Fox wrote to defense counsel on May 28, 2021, asking that they stipulate to remand because the Karuk Tribe was only seeking to recover by way of Plaintiffs' lawsuit, "damage to land that the Tribe **owns in fee simple**, just like any other property owner," and not damage to tribal trust or allotment lands. Fox Decl, ECF No. 8-3, Ex. A (emphasis in original). Ms. Fox indicated that her representation in that regard would be corroborated by the Declaration of the Tribal Council Chairman if a motion for remand proved necessary. Defense counsel nonetheless disagreed with her argument that there was accordingly no basis for federal jurisdiction, stating that a simple "possessory interest" on the part of the Tribe was sufficient, and cited a support the Ninth Circuit's decision in Pit River Home & Agric. Co-op Ass'n v. United States, 31 F.3d 1088, 1103 (9th Cir. 1994). Counsel has continued to take that position in opposing Plaintiffs' Motion to Remand.

In evaluating what constitutes tribal trust land, and why that distinction is important, some background is in order. Defendant's Notice of Removal relies on 28 U.S.C. § 1362 to support its claim that federal question jurisdiction exists under 28 U.S.C. § 1331. See Notice of Removal, ¶ 8. Section 1362 provides:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

While 28 U.S.C. § 1360 granted certain states, including California, jurisdiction over civil disputes involving tribal members, it specifically excepts issues pertaining to "the ownership or right to possession of [tribal] property."

As the California Supreme Court explains in Boisclair v. Superior Court, 51 Cal. 3d 1140 (1990), this exception has to be "understood in the historical context of the relationship between the federal government, state government, and Indian tribes." Id. at 1147. As the Boisclair court explains, "[t]he predominance of the federal government is nowhere more pronounced than in the field of Indian property law", since "[m]ost Indian lands are owned by the United States and held in trust for the benefit of Indians." Id. at 1148. Federal statutes consequently forbid the alienation of tribal lands without approval from the federal government. This "unique nature of Indian title, which bestows a right not of ownership but of occupancy 'good against all but the sovereign' United States government . . . is recognized as the basis for exclusive federal jurisdiction over Indian property." Id.; citing Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 667 (1974). Boisclair goes on to describe the policy rationale for the government's role as follows:

> The protection of Indian trust land through federal legislation has been one of the principal means by which the federal government has sought to secure the economic well being and tribal autonomy of Native Americans. If tribal lands were not subject to restraints on alienation and tax immunities, market forces and state tax assessors would eventually erode Indian ownership of the reservation.

14

Id. at 1149.

Factually, Boisclair involved a dispute over easement rights concerning several property parcels, two of which were undisputedly held in trust by the United States for the Pala Indian Tribe. The California Supreme Court overturned the lower court's determination that state courts were empowered to adjudicate such disputes over tribal land, stating that state court jurisdiction was barred "[a]s long as the Indian party to the litigation claims that the property [at issue] is Indian trust or allotted land"[3] because that status makes the dispute "one concerning ownership and possession of Indian land" over which state court jurisdiction cannot be asserted. Id. at 1154.

The Boisclair court thus makes it clear that it is the unique tribal right of possession over trust property (which tribes do not own and is instead held for them in trust by the government) that triggers federal jurisdiction. Given that, Defendant's claim here that a tribe's possessory status alone (irrespective of ownership) confers federal jurisdiction is misplaced. PacificCorp cannot claim that possessory status stemming not from the government's trust interest but instead conferred solely by the Tribe's ownership of the parcels in fee simple under state law, confers federal jurisdiction.

To that end, the case law cited by Defendant does not support its position. In Pit River, for example, two groups of Indian families, both purporting to represent the Pit River Tribe, claimed beneficial ownership of real property that had been placed by the federal government in trust status for the Tribe at a point when it had not yet been formally recognized by the Secretary of the Interior. One of the groups, the so-called Pit River Home and Agricultural Cooperative Association (the "Association") sued the United States for beneficial ownership of the property in question, and the other, designed as the Pit River Tribal Council (the "Council") sued a leader of the Association for trespass. With respect to its claims premised on Section 1362 (the same statute invoked by Defendant herein), the district court found that since the Association's alleged beneficial

---

[3] Like trust lands, title to allotted lands is also ordinarily held in trust by the government, but for the benefit of individual Indians instead of for the entire tribe.

ownership was based on its status as a federally recognized tribe, the lack of such status precluded federal jurisdiction. In addition, the Council's corresponding claim for trespass against the Association's leader, made under Section 1362 as well, was likewise rejected. The district court reasoned that since the Council's only basis for asserting the "possessory interest" needed to state a trespass claim came from the possession incident to the Tribe's beneficial ownership of the property, and because the Council too lacked any such interest absent authorization as the authorized tribal representative, its trespass claim necessarily failed. 30 F.3d at 1094.

The Ninth Circuit affirmed, agreeing that neither the Council nor the Association had been recognized as the governing body for the Pit River Tribe, and also agreeing that with respect to the Council's trespass claim in particular, the Council lacked the "possessory" interest needed to assert a trespass claim Id. at 1105.

The property at issue in Pit River was clearly tribal trust land, with the special possessory interest that confers. Although the Ninth Circuit indeed looked to whether the Council did have a possessory interest (as argued by Defendant here), it did so because a viable trespass claim requires possession and the only possessory right at issue, in the absence of ownership, was whether such an interest was present because the property was held by the government in trust for the Pit River Tribe. As the Pit River court recognized, it is the "nature and source of the possessory rights of Indian tribes to . . . lands conferred by treaty, statute or other formal government action" that presents a federal question. Id. at 1097 (citing County of Oneida, 414 U.S. at 677-78).

No such interest inured to the Council in Pit River because it had not been recognized as the Tribe's representative. PacifiCorp cannot argue that the Ninth Circuit considered a possessory right independent from that conferred by the trust status of the property, let alone that there is any possessory status untethered to tribal trust property here that somehow creates federal jurisdiction. As Plaintiffs maintain, to the extent the Karuk Tribe owned the parcels affected by the Slater Fire in fee simple under state law, there is simply no analogous possessory interest giving this Court jurisdiction because

1  the Tribe's ownership is akin to that of any other private landowner in California and

2  does not invoke special Indian property issues over which federal control has been

3  asserted.[4]

4  The other cases cited by PacifiCorp are also inapposite. In <u>Mescalero Apache

5  Tribe v. Burgett Floral Co.,</u> 503 F.2d 336 (1974), for example, the Ninth Circuit found that

6  the district court erred in rejecting federal question jurisdiction under Section 1362 where

7  the Tribe sued non-Indian local companies and an individual engaged in arboculture for

8  trespassing on their reservation and destroying trees thereon. Citing "'continuously

9  protected . . . possessory rights to tribal lands" that it found to be "wholly apart" from

10  "state law principles which normally and separately protect a valid right of possession",

11  the Ninth Circuit implicitly recognized the trust status of the Mescalero Apache

12  Reservation and found a possessory interest that provided federal jurisdiction on that

13  basis. <u>Id.</u> at 338.[5]

14  Again, through the Atteberry Declaration, as enumerated above, Plaintiffs here

15  have shown that no analogous trust status is present since the property for which

16  damages are sought by the Tribe in this litigation is held in ordinary fee simple status,

17  with possession therefore having nothing to do with a tribal trust arrangement involving

18  the government which could create federal jurisdiction.

19  <u>Gila River Indian Community v. Henningson, Durham & Richardson,</u> 626 F.2d 708

20  (9th Cir. 1980) is no more helpful. There too the land in question was held by the United

---

[4] PacifiCorp argues that the Karuk Tribe's alleged efforts to convert several of the parcels to trust status somehow mandates a different result. The Court disagrees. The fact that something may or may not occur on the future has no bearing upon the basis (or lack thereof) for the Court's jurisdiction now. Instead, it is the current status of the property which must necessarily be determinative. Consequently, Exhibits B through E to the Decl. of Derek Roberts, ECF No. 18-1, which purport to shed light on land conversions that may happen in the future, are irrelevant and Plaintiffs' objections to those Exhibits (ECF No. 19-5) are SUSTAINED.

[5] Defendant's citation to a recent Central District case, <u>County of Mono v. Liberty Utilities Calpeco Electric, LLC</u>, No. CV 21-769-GW-JPRx, 2021 WL 3185478 (C.D. Cal. May 6, 2021) is similarly misplaced. There the state claim asserted also involved tribal trust lands. <u>Id.</u> at *2. As the <u>Mono</u> court noted: "Bridgeport [the Indian tribe] seeks damages from Defendants to tribal land caused by Defendants' alleged trespass negligence. As such, federal jurisdiction exists because the Indian right of possession is at stake." <u>Id.</u> at *4 (internal citation omitted). In this case, on the other hand, there is no damage to tribal trust lands present that would support a special "Indian right to possession."

States in trust for the Tribe. Id. at 709. While the district court did find that Section 1362 did not confer federal jurisdiction in that case, it did so because the dispute involved construction defect claims against private engineering and contracting firms that built a Youth Center on the tribal property. The Ninth Circuit affirmed the district court's dismissal on grounds that those claims had nothing to do with "possessory rights" to "tribal lands" that would have conferred jurisdiction; to the contrary, the court reasoned that "[t]here is nothing in the present case which suggests that is anything more than a simple breach of contract case." Id. at 714. Likewise, there is nothing in the case at bar which invokes anything other than property damage claims under state law. No special Indian possessory interest is present that would bring the matter under the purview of the federal courts.

Finally, while PacifiCorp correctly points out that another Ninth Circuit case, Chilkat Indian Village v. Johnson, 870 F.2d 1469 (9th Cir. 1989) is factually distinguishable from the case at bar, the reasoning employed by that decision nonetheless supports Plaintiffs' position. In Chilkat, an Indian tribal association in Alaska (the "Village") sued an art dealer and others on various grounds, including conversion, as a result of the allegedly misappropriation of Tlingit art objects without permission and in contravention of Village ordinances. The district court dismissed the Village's federal lawsuit, which was premised on Section 1362, and the Ninth Circuit affirmed. It rejected the Village's claim that its possessory interest in the objects arose under and was protected by federal law, pointing out that the Village had "neither alleged nor offered any factual or legal basis for that assertion." Id. at 1472. The Court reasoned:

> The artifacts are not alleged to be trust property, nor property held pursuant to federal statute or federal common law. Whatever proprietary interest the Village has in the artifacts is a creature of tribal law or tradition wholly unconnected with federal law. No construction of federal law is necessary to adjudicate title.

Id. at 1472-73.

///

Although true that Chilkat does not involve real property like the present matter, its logic is still cogent. For purposes of Section 1362 federal question jurisdiction, neither the art objects in Chilkat or the property parcels involved here were held by the United States government in trust. Moreover, in both cases federal law was found to be otherwise unrelated to the claims being asserted. Unlike tribal trust property, where a court must look to federal law and the terms of applicable trust agreements to determine a particular tribe's possessory interest, fee simple ownership pursuant to state law requires reference only to state law to assess the scope of that interest.

In sum, because case law supports the proposition that it is only tribal trust property issues that triggers federal jurisdiction given the government's pervasive role in such questions, and because it is clear here that no such trust property is involved, federal jurisdiction is lacking. The Karuk Tribe's fee simple title to the parcels in question is a creature of state law not subject to adjudication here. Because the Court finds no federal claim conferring subject matter jurisdiction as to the Karuk Tribe's claims,[6] it declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over those additional causes of action being pursued by the 269 other named Plaintiffs to this lawsuit.

**CONCLUSION**

As set forth above, because Defendant's Motion to Amend Notice of Removal

---

[6] PacifiCorp also argues that the Court should retain jurisdiction and deny remand based on the so called "mandatory retention" doctrine, citing Williams v. Costco Wholesale Corp., 471 F.3d 975 (9th Cir. 2006). This means, according to Defendant, that because the federal enclave theory upon which they now claim that federal jurisdiction can be predicated was "apparent" from the face of the FAC, jurisdiction is conferred irrespective of whether Defendant's Motion to Amend was granted. Def.'s Opp. to Mot. to Remand, 9:15-10:5. Aside from disagreeing with that the factual predicate for PacifiCorp's argument (that the federal enclave argument was apparent from Plaintiffs' operative pleading; it was not), Williams is inapplicable in any event since it provides only that "[o]nce a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice." Williams, 471 F.3d at 977. Here, as discussed above, the Court finds that removal on the basis of tribal land issues was not warranted; thus, Williams and its discussion of the mandatory retention doctrine does not apply.

seeks to add a completely new basis for removal after the initial 30-day period for effectuating removal has passed, that Motion is DENIED.[7]  Plaintiffs' Motion to Remand is, however, GRANTED, since the remaining basis for removal; namely, the presence of a tribal property interest, does not invoke federal question jurisdiction here since the Tribe's fee simple interests can be adjudicated solely through state law.  The Clerk of Court is accordingly directed to remand this case, in its entirety, back to the Superior Court of California, County of Sacramento, where it originated.

IT IS SO ORDERED.

Dated:  February 28, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that PacifiCorp has also filed a Motion for Leave to File Supplemental Briefing (ECF No. 25) to address new authority bearing on the federal enclave doctrine.  Because the Court has denied Defendant's motion to amend to include that doctrine as an additional basis for removal, it need not consider any supplemental briefing on the issue and Defendant's Motion is accordingly DENIED.  Because Plaintiffs' Request for Judicial Notice (ECF No. 17-4) similarly pertains to documents relating to the federal enclave doctrine, it too is DENIED as moot.